EDMUND THOMPSON, SR. *v.* STATE OF MARYLAND

[No. 30, January Term, 1945.]

*Decided April 12, 1945.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, MELVIN, HENDERSON and MARKELL, JJ.

Z. Townsend Parks, Jr., with whom was Howard Calvert Bregel on the brief, for the appellant.

J. Edgar Harvey, Assistant Attorney General, with whom were William C. Walsh, Attorney General and James D. C. Downes, State's Attorney for Baltimore County, on the brief, for the appellee.

MARBURY, C. J., delivered the opinion of the Court.

Appellant was indicted by the grand jury of Baltimore County for receiving stolen goods. These goods are described in the indictment as "3,630 gallons of gasoline of the value of 17 cents per gallon, current money of the United States, of the goods and chattels of the American Oil Company, a body corporate." He plead "not guilty," was tried before a jury, found guilty and sentenced to serve nine months in the penitentiary. The verdict was found on October 26, 1944, and after a motion for a new trial had been made and heard, the sentence was imposed on November 30, 1944. On the same day as the imposition of the sentence, an order for an appeal to this Court was filed. On January 5, 1945, appellant made a motion to strike out the judgment and sentence, on the ground that the indictment was void for failing to state with the particularity required by law, the alleged crime for which the appellant was convicted, and that the indictment failed to properly describe the articles alleged to have been received as stolen goods. The State filed a motion ne recipiatur, on the ground that the motion was not filed within the term of court in which the judgment was rendered. The lower court on January 8, 1945, granted this motion, for the reason assigned, and for the additional reason that the court was without authority to entertain the motion filed subsequent to the entry of the appeal. Appellant excepted to what he described as the court's refusal to grant his motion to strike out the

judgment and sentence and to the granting of the State's motion *ne recipiatur*. No appeal from the court's action on these motions, or either of them, was taken. There is, therefore, nothing before us on this point.

It may, however, be observed that in addition to the reasons given by the lower court, Article 27, Section 649, of the Annotated Code provides that no judgment upon any indictment shall be reversed for any matter which might have been a subject of demurrer to the indictment. No demurrer was filed in this case to the indictment. There have been numerous cases in this Court holding that failure to demur prevents a traverser from raising such a point later. *Wilson v. State,* 181 Md. 1, p. 8; 26 A. 2d. 770; *Cowman v. State,* 12 Md. 250; *McCurdy v. State,* 151 Md. 438, 135 A. 161.

There are three exceptions in the record, taken in the course of the testimony. Ringley, the man who stole the gasoline, who was, at the time of testifying, serving a sentence in the Baltimore City Jail for the theft, was giving his version of the occurrences at the appellant's garage at the time the gasoline was supposedly delivered there. He was asked whether he had any conversation with the appellant that night, and he said he had. He said he was called into the office by the mechanic and "Mr. Thompson wanted to talk to me over the telephone." He was asked if he recognized the voice over the telephone as that of Mr. Thompson. He said that the only way he could tell he was Mr. Thompson "he told me just who he was that night." He was then asked what was the conversation. Before ruling on an objection to this question the court said "Do you know whether it was Mr. Thompson, or not?" And the witness said "No sir. I couldn't say whether it was Mr. Thompson or not. I was only talking to him on the telephone, sir." The objection to the witness relating the conversation was sustained. The State then asked this question, "What identification, if any, did the individual on the other end of the line give to you, to advise you who was talking?" Over the objection of the traverser, the witness was per-

mitted to answer. This ruling of the court constitutes appellant's first exception.

The answer to the objected question was not responsive. It repeated the same statement the witness had previously made without objection. He said, "Well, the mechanic came out to the truck and told me Mr. Thompson wanted to talk to me over the telephone about the shortage of gasoline." Then he was asked, "Now when you got to the phone, who did the party on the other end say it was talking?" He answered, "He said—I answered the telephone and said hello. He said this is Mr. Thompson, he said." The court then said "Any other identification?" And the answer was "That's all." The conversation was not admitted, but the exception is directed to what is called the continued and persistent effort of the State (and the court) to have the witness identify the voice he heard, in such a way that the conversation could be admitted. It was obviously important from the standpoint of the prosecution that it be shown what the appellant said to the man who stole the gasoline, at the time the latter was delivering it to appellant's garage. But the question objected to was preliminary only. It was the duty of the State to try to identify the appellant as the person who talked, in order to introduce the conversation which was supposedly relevant. The State did not succeed in identifying the telephone voice, and so did not get the conversation in evidence. But there was no error in asking the preliminary question. The appellant claims that emphasizing this unidentified conversation was prejudicial, because it made the jury believe that a conversation with the appellant took place. It is difficult to say whether this is correct or not. It could just as readily be argued, from the fact that the State tried to show that the appellant was telephoning and did not succeed, that the jury might believe that there was no conversation with the appellant. We can find no error in permitting the preliminary question to be asked.

The second exception is to the refusal of the court to permit a question to be asked by the appellant's counsel

on cross examination. The witness was a woman who had been in Florida with the man who stole the gasoline. After she came back, she went to see appellant and demanded more money for the thief, and was given $25.00 by appellant. There was no other evidence then of this, although the appellant later admitted it. The testimony of the witness in this respect and in other respects was very damaging. The appellant, in order to break her down, was questioning her about her return from Florida, and asked her "Then you do know why you came up, because your boy friend was locked up and brought up here, isn't that right?" Her answer was "Not necessarily." Appellant's counsel then said "You are his 'Moll.' Isn't that right?" The court refused to permit this question to be put.

Witnesses can be asked questions on cross examination to show bias or interest or animus, which would affect their credibility. In this case, however, the man who stole the gasoline had been convicted, and was serving his term. The fact that the witness was friendly to him, or had personal relations with him, would not necessarily cause her to be hostile to appellant. Her testimony would not affect the case of the man who did the stealing, because he had been tried and sentenced, and there is no reason to suppose it would lighten his sentence. The woman herself was not charged with anything. It appears, therefore, that the witness was being asked about a collateral matter which would not affect her credibility, but which might have some effect on the jury by showing her morals were not above reproach. The purpose was to degrade and humiliate her in the minds of the jury, and that is not permissible. *Annarina v. Boland,* 136 Md. 365, 111 A. 84; *Avery v. State,* 121 Md. 229, 88 A. 148; *Brown v. State,* 72 Md. 468, 20 A. 186.

The third exception was to a question asked an auditor of the American Oil Company. This question was "What would be the value of that particular quantity of gasoline in Maryland, taking into consideration the tax per gallon, that's all?" It was necessary for the State

to show the value of the gasoline because there are two classes of offenses of receiving stolen goods. One is where the value of the goods is under $25.00, and the other where the value is $25.00 or over. Annotated Code, 1939, Article 27, Sections 548 and 549. The argument made by appellant on this exception is not to the asking of this question, but to the sufficiency of the proof of the value of the gasoline. But that is a matter for the jury. We cannot pass upon the sufficiency of the evidence in a criminal case.

No error having been made by the court below in the rulings, the judgment will be affirmed.

*Judgment affirmed with costs.*