261 P.2d 992

**IDEAL FOOD PRODUCTS CO. et al. v.
RUPE et al.
No. 5484.**

Supreme Court of Arizona.
Oct. 13, 1953.

Moore & Romley, by Charles L. Hardy and Anthony T. Deddens, all of Phoenix, for appellants.

R. J. Ellis, of Eloy, and R. D. Walker, of Florence, for appellees.

WINDES, Justice.

Suit by Georgia Rupe and her husband Charlie Rupe against V. L. McDonald and Ideal Food Products Company, a corporation. The factual basis of the suit is alleged negligence on the part of McDonald while acting within the scope of his employment as an employee of the defendant corporation. Trial before a jury resulted in a verdict for the plaintiff in the sum of $5,000, the amount claimed in the complaint. Defendants appeal and assign as error the denial by the trial court of their motion for new trial because of excessive damages appearing to have been given under the influence of passion and prejudice. Thus we have for consideration only the question of damages—the legality of the amount thereof and whether the verdict is so excessive that this court will say it springs from partiality, prejudice or corruption. The husband Charlie Rupe being merely a nominal party, we will refer to the parties as plaintiff and defendants.

The basis of the claimed injury was a fall, and the damages alleged to have resulted therefrom are stated in the complaint as follows:

"* * * and by reason of said fall, the plaintiff suffered abrasions and contusions of the right knee and right wrist; a severe sacroiliac sprain and severe arthritic change about the left hip and was laid up for a long time and was made to endure great pain and suffering and was prevented from at-

tending her usual business duties; and was obliged to and did expend large sums of money for medical attention; and received a severe shock to her nervous system and is, as plaintiff, Georgia Rupe, is informed and believes, permanently injured, all to her damage in the sum of Five Thousand and No/100 ($5,000.00) Dollars."

It appears from the evidence that after the fall plaintiff was taken to the doctor where an examination was made without X-ray. The doctor testified that she had a sprained right wrist, abrasions on the knee and contusions on the left buttock and there was nothing to indicate the necessity for an X-ray study at that time. Subsequently she was given diathermy treatments about every other day, for five or six times. Ten or eleven months later X-ray pictures were taken which showed definite evidence of proliferative arthritis in the joint and on the capsule of the left hip where the injury had been sustained. The doctor further testified that in his opinion the arthritic condition was traumatic, caused by a fall or some injury; that traumatic arthritis is first evidenced by a change in the soft tissue around the joint and later, from eight months to a year thereafter, the bony changes take place; that the condition was permanent in nature, resulting in considerable disability and considerable pain depending upon weather conditions. On cross-examination the doctor said the condition *could* have existed for several years, and he would not say definitely that it was the result of this particular fall. We think the entire testimony of the doctor, properly interpreted, is that the arthritic condition found in the left hip joint was caused by some fall or external injury in that region; that it could have resulted from the fall over which the litigation arose, but there was a possibility that the condition had existed prior thereto. There was no other expert testimony relating to the causal relation between the fall and the present condition.

The evidence established a total out-of-pocket medical expense of $31. In its instruction to the jury, the trial court limited the jury in measuring plaintiff's damages to the medical expenses and the past and future pain and suffering. The correctness of the instruction has not been questioned; consequently it is, in this cause, the criterion by which to determine the correct damages. The result of the verdict therefor must be $31 for medical expenses and $4,969 for pain and suffering.

The contention of the defendants is that the jury could not legally assess any damages for the permanent arthritic condition, for the reason that the doctor's testimony at best was that it was merely possible that the permanent ailment was caused by the injury with a like possibility that it existed prior thereto, thus leaving the matter of causal connection in the realm of mere speculation. It is further urged that with the elements of damage thus stripped down

to temporary pain and $31 medical expenses the verdict is of such amount as will shock the conscience of the court and therefore convict the jury of being motivated by passion and prejudice.

Our most recent expression on this subject is found in the case of Stallcup v. Rathbun, 76 Ariz. 63, 258 P.2d 821, 824, wherein we approved the following test in determining whether a jury was actuated by improper motives in rendering its verdict:

> " ' * * * "The damages, therefore, must be so excessive as to strike mankind, at first blush, as being beyond all measure, unreasonable, and outrageous, and such as manifestly show the jury to have been actuated by passion, partiality, prejudice, or corruption. In short, the damages must be flagrantly outrageous and extravagant, or the court cannot undertake to draw the line, for they have no standard by which to ascertain the excess." ' "

If the defendants' premise be correct that the jury could not (after the court instructed it to the contrary) consider the permanence of the injury to the extent of allowing compensation for future pain and suffering, the conclusion that $4,969 for merely temporary pain would shock the conscience of the court might be justified. The crucial question, therefore, is whether such premise is correct, and if not, may the verdict be attributed to honest motives.

The general rule is that medical testimony as to the mere possibility that an accident has a causal connection with an existing condition is insufficient to warrant a finding that the accident caused the condition. However, the rule is likewise that if there is medical evidence of the possibility of the existence of the causal relationship together with other evidence or circumstances indicating such relationship, the finding that the accident caused the injury will be sustained. Annotation 135 A.L.R. 517, 532. This court has applied these principles. Western Truck Lines v. Berry, 53 Ariz. 216, 87 P.2d 484; Apache Powder Co. v. Bond, 61 Ariz. 184, 145 P.2d 988, 990. In the former we held that it was not sufficient to show merely that an injury *might have been* caused by negligence, and in the latter we held that where there was expert testimony that the injury *possibly* was or *could have been* the cause, together with other evidentiary circumstances indicating the verity of the causal relationship, same could legitimately be found. Therein we said:

> "It is strenuously urged that since the only medical testimony concerning a causal connection between the injury and the resulting tuberculosis was that of Dr. Causey that it was a possibility, and that of Dr. Davison that it could be, the award allowing compensation for the disability caused by the disease was necessarily based on surmise, speculation and conjecture. There is sub-

stantial merit to this contention, but we think that the historical circumstances prior and subsequent to the accident, together with the nature of the accident, is sufficient, together with the doctors' testimony of possible causal connection as would give legal validity to the commission's conclusions. A doctor's opinion on matters of this character does not have to be positive in order to have some value as evidence. * * *"

The plaintiff testified to extreme pain after the accident and that prior to this fall she had never experienced any pain in and about her left hip. While she never testified directly that she had never before received an injury in this region, it would be a reasonable conclusion from the total absence of prior pain therein. So we have a warranted fact situation of an injury to the left hip, a subsequent discovery of traumatic arthritis therein, no evidence of a prior trauma or injury that could have been the cause, and an authorized inference of no prior injury. This testimony and these circumstances, together with the doctor's testimony, was sufficient to justify the triers of fact in finding that the fall from which the litigation arose was the cause of the permanent condition testified to by the doctor, and the jury could consider future suffering in measuring the damages. Likewise, considering the evidence before the jury of the permanent character of the injury, the court's direction to the jury that

it should consider the character of the injury, and the pain and suffering which she will probably endure in the future, we cannot say the verdict is so shocking in amount that we should impute to the jury passion, prejudice, partiality or corruption.

This does not mean that the amount so awarded for the single item of pain and suffering is within the realm of fair compensation. The plaintiff in her complaint estimated her damages at $5,000, the amount of the recovery. Items included in this estimate were a severe sacroiliac sprain and that she was laid up for a long time and could not attend to her usual business duties. These elements were not proven nor given to the jury for its consideration. She claimed large medical expenditures which claim was untrue. While she may have suffered some discomfort from the time of her initial treatments until eleven months later when X-ray pictures were taken, yet she never visited the doctor during this period and we may presume the suffering was not extremely severe. She may suffer discomfort in the future, the intensity thereof depending, as the doctor says, upon weather conditions. Considering all these matters, we think that the sum of $4,969 for only pain and suffering is excessive and beyond the scope of fair compensation for this item and we shall, under the power given us by statute, require a remitter as a condition to the denial of a new trial.

It is therefore ordered that if plaintiff shall within twenty days file a remitter in this court in the sum of $2,000, the judgment will in all respects be affirmed. Otherwise the judgment will be reversed and the cause remanded for a new trial.

STANFORD, C. J., and PHELPS, LA PRADE, and UDALL, JJ., concurring.